T.C. Summary Opinion 2010-162

UNITED STATES TAX COURT

SHIRLEY UCOL-COBARIA, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14887-09S.                    Filed October 27, 2010.

Caroline DeLisle Ciraolo, for petitioner.

Tyler N. Orlowski, for respondent.

GOLDBERG, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion should not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code (Code) in

effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes of $1,994, $5,401, and $157, and section 6662(a) accuracy-related penalties of $399, $1,080, and $32, for 2005, 2006, and 2007, respectively.  After concessions,[1] the issues for decision are:  (1) Whether petitioner's salary for 2005, 2006, and a portion of 2007 from the Baltimore, Maryland, City Public Schools (BCPS) is exempt from Federal income tax under the Convention With Respect to Taxes on Income, U.S.-Phil., art. 21, Oct. 1, 1976, 34 U.S.T. 1277 (article 21); (2) whether petitioner is entitled to deduct certain employment, living, and other itemized expenses that she claimed for 2005 and 2006; and (3) whether petitioner is liable for the accuracy-related penalty under section 6662(a) for any or all of the 3 years at issue.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioner resided in Maryland when she filed her petition.

---

[1]Respondent also determined that petitioner did not include State income tax refunds and interest income in her gross income for 2006 and 2007.  Petitioner did not address these issues at trial; therefore, the issues are deemed conceded.  See Rule 149(b).

Petitioner is a citizen of the Republic of the Philippines. She received a bachelor's degree in physical therapy from San Juan de Dios Educational Foundation, Inc. She then attended De La Salle University, where she received a certificate in teaching in 2002 and a master's degree in teaching in 2005. Both of these institutions are in the Philippines. Petitioner was an eighth grade science teacher at Paref Woodrose School in Muntinlupa City, Philippines, from 2002 until she left the Philippines in 2005.

Petitioner entered the United States on June 22, 2005, arriving in Baltimore to teach for BCPS as part of an international teaching exchange program sponsored by the U.S. Department of State (the State Department). Amity Institute (Amity) is a nonprofit organization the State Department approved to operate an exchange teacher program. The exchange teacher program allows qualified foreign teachers to enter the United States to teach for up to 3 years.

Amity does not directly recruit teachers from the Philippines. During 2004 and 2005 Amity worked with Badilla Corp. (Badilla), a business entity from the Philippines, and with Avenida & Associates, Inc. (Avenida), a business entity from the United States. Badilla and Avenida are affiliated entities, and they worked together to facilitate the placement of qualified Filipino teachers in American schools. Badilla collected

background information, such as transcripts and résumés, from teachers in the Philippines who were interested in the exchange teacher program in the United States. Badilla found its prospective Filipino teachers principally by word of mouth and seminars conducted by its executives. Avenida or Badilla charged placement fees and additional charges to help teaching candidates with, among other tasks, finding employers in the United States and obtaining visas. In the United States, Avenida helped school districts find promising teaching candidates by providing access to a database of overseas jobseekers.

In late 2004 petitioner attended an orientation session for an exchange teacher program Badilla sponsored. She ultimately submitted her transcript and résumé to Badilla. BCPS worked with Avenida to receive access to a preselected list of qualified Filipino teachers. This was the first time BCPS had recruited teachers from the Philippines. From the preselected teachers BCPS administrators chose the candidates the school system wanted to interview. In January 2005 George Duque, manager of recruitment and staffing for BCPS, traveled to the Philippines to interview petitioner and other teaching candidates. Shortly afterwards Badilla informed petitioner that BCPS would be offering her employment for the 2005-2006 school year. Petitioner received a letter from BCPS dated February 1, 2005, officially offering her employment for the 2005-2006 school year.

Generally, foreign teachers who want to teach in the United States may obtain one of two types of visas. One is the H-1B visa for working professionals. The second is the J-1 visa for individuals coming to the United States under a cultural exchange program approved by the State Department. The J-1 visa is more convenient for foreign individuals who are new teachers in the United States because the visa timing coincides with the academic school year in the United States. Petitioner's parents paid Avenida $5,200 for the following fees: A $3,200 placement fee, a $725 U.S. documentation fee, a $500 J-1 visa processing fee, and a $775 for airfare and travel.

Amity sponsored petitioner's visa. The State Department authorized Amity to issue Form DS-2019, Certificate of Eligibility for Exchange Visitor (J-1) Status. The form identifies the visitor; identifies the visa sponsor; briefly describes the exchange program, including the start and end dates; identifies the category of exchange; and states the estimated cost of the exchange program. At all relevant times, Gertrude Hermann was Amity's executive director.

An Amity representative explained to petitioner that if she accepted the teaching offer, BCPS would be evaluating her performance throughout the school year. If her performance was satisfactory, BCPS would continue her employment for the following school year.

In a letter to petitioner dated April 11, 2005, Amity confirmed BCPS's offer. On April 21, 2005, petitioner signed an Amity exchange teacher contract with Amity and BCPS. Amity prepared a Form DS-2019 for petitioner's signature and mailed it to her. The length of time listed on the Form DS-2019 for petitioner's visa was 3 years, the same length as the exchange teacher program. Petitioner signed the form and returned it to Amity for processing.

Petitioner resigned from her teaching position in the Philippines to teach for BCPS. Upon her arrival in Baltimore on June 22, 2005, petitioner signed a 1-year lease for an apartment at Symphony Woods Apartments. On August 10, 2005, petitioner signed a standard Provisional Contract for Conditional or Resident Teacher Certificate Holders (BCPS employment contract), effective beginning August 24, 2005. The BCPS employment contract was for 1 year, terminating at the end of the 2005-2006 school year. It is the only contract that petitioner signed with BCPS. All first-year teachers who did not have full professional certification signed a similar BCPS employment contract. BCPS assigned petitioner to teach at Lombard Middle School (Lombard).

The BCPS employment contract required teachers to take the Praxis I and II tests, which are part of the teacher certification process that many States require, including Maryland. Petitioner completed the Praxis I test in late 2006.

Petitioner received a Maryland education certificate in 2007, valid from July 1, 2005, through June 30, 2010. As of trial, petitioner had not completed the Praxis II test.

Soon after she began teaching at Lombard petitioner began experiencing significant difficulties with student behavior and attitude. Petitioner also sustained physical injuries when two students began fighting in her classroom and a table was pushed against her leg. In a November 14, 2005, email to Amity, petitioner chronicled her difficulties and requested a transfer to Baltimore County Schools for the following school year. Petitioner began her email by stating: "i'm really having second thoughts of continuing my teaching here at baltimore city for the next school year." Petitioner's transfer request was denied, and she continued teaching at Lombard.

Working in the United States provided petitioner with a salary that was considerably greater than what she had earned in the Philippines. In the Philippines petitioner had earned approximately 20,000 Filipino pesos a month, equivalent to $357 per month or $4,284 per year. Petitioner's annual salary for her first year of teaching for BCPS was $34,973, which increased to $44,733 and $48,674 for her second and third years, respectively.

With respect to Federal income tax withholding, petitioner did not provide BCPS with Form 8233, Exemption From Withholding on Compensation for Independent (and Certain Dependent) Personal

Services of a Nonresident Alien Individual. Consequently, BCPS withheld Federal income tax from petitioner's salary during 2005, 2006, and 2007. Instead, petitioner incorrectly attached Form 8233 to her 2005 Federal income tax return, and she did not complete the section of the form that requested the applicable dates of exemption.

Petitioner engaged professional tax preparers to prepare her 2005, 2006, and 2007 Federal income tax returns. For 2005 and 2006 petitioner filed Forms 1040NR, U.S. Nonresident Alien Income Tax Return. For 2007 she filed Form 1040, U.S. Individual Income Tax Return. Petitioner reported that her salary from BCPS for the 2005 and 2006 calendar years was exempt from taxation in the United States under article 21. Petitioner included all of her earnings from BCPS for 2007 on her 2007 Federal income tax return. In her amended petition, however, she contended that the first 6 months of her 2007 earnings from BCPS were also exempt from Federal income tax under article 21's 2-year exclusion.

Petitioner claimed itemized deductions of $8,780 and $15,805, for 2005 and 2006, respectively, related to her employment, living, and transportation expenses. She claimed the $5,350 standard deduction for 2007. As a result of the income exclusion, income tax withholding, and deductions, petitioner requested refunds for each year 2005 through 2007.

Petitioner returned to the Philippines on June 16, 2008, before her J-1 visa expired on June 27, 2008. She applied for and obtained an H-1B visa valid from July 14, 2008, through June 20, 2011. She then returned to the United States, and as of the date of trial, she continued to be employed by BCPS.

The Internal Revenue Service (IRS) selected petitioner's 2005, 2006, and 2007 Federal income tax returns for examination. The examining agent sent three questionnaires to petitioner: Form 8784, Questionnaire - Temporary Living Expenses; Form 9210, Alien Status Questionnaire; and Form 9250, Questionnaire - Tax Treaty Benefits. Petitioner completed the forms, dated her signature September 24, 2008, and returned the forms to the IRS.

The Court received into evidence copies of the three questionnaires that petitioner had completed. On Form 8784 petitioner marked that she did not request a leave of absence from her employer in the Philippines, and she added that there was no reason for her to request a leave of absence. On Form 9210 petitioner wrote that June 22, 2005, was her date of initial arrival and that at that time she expected to remain in the United States for 3 years. She answered the next question on Form 9210, indicating that she revised and renewed her visa status so that she could stay in the United States for another 3 years.

In the notice of deficiency dated March 26, 2009, the IRS adjusted petitioner's income to include the earnings from BCPS for 2005 and 2006 that petitioner had excluded under article 21. In addition, the IRS disallowed $6,908 of the $8,780 in itemized deductions that petitioner claimed for 2005 and $12,292 of the $15,805 in itemized deductions that she claimed for 2006 and allowed the $5,350 standard deduction for 2007. The $6,908 of disallowed deductions for 2005 consisted of $5,000 for "legal/documentation" fees, $1,000 for a laptop computer, $200 for computer software, $400 for school supplies, and $308 for union dues. The $12,292 of the disallowed deductions for 2006 consisted of $6,038 in rent, including utilities; $2,004 for transportation between her apartment and her teaching job at Lombard; $930 for an agency fee; $800 for airfare; $1,673 for computer equipment and supplies; and $847 for "2005 State Refund not Received". Petitioner filed her petition contesting all of respondent's adjustments.

Respondent moved under Rule 121 for partial summary judgment concerning the issue of whether petitioner qualified in the years at issue for the exemption under article 21. Petitioner objected to the granting of the motion. The issue was fully briefed by both parties. The motion was set for hearing at trial. When the case was called for trial, the motion was heard. The parties

relied on their respective positions set forth in their briefs. The motion for partial summary judgment has been denied.

The case was then tried, and the Court heard testimony from petitioner, Mr. Duque, and Ms. Hermann. The Court also received into evidence a form BCPS completed for Amity entitled "Addendum to Amity Confirmation of Employment Form 2007/2008" (the addendum). Mr. Duque signed and dated the form July 1, 2007. The addendum showed that BCPS had retained 170 of the 178 (95.5 percent) of the Filipino teachers in the past 2 years who had taught for BCPS through Amity's exchange teacher program.

## Discussion

### I. Income Under Article 21

Petitioner was a nonresident alien for the years at issue because of her J-1 visa status and her participation in the exchange teacher program. See sec. 7701(b). In particular, section 7701(b)(1)(B) provides that a nonresident alien is a person who is not a citizen or resident of the United States within the meaning of section 7701(b)(1)(A).[2] Generally, a nonresident alien individual engaged in trade or business within the United States is taxed on the taxable income effectively connected with that trade or business. Sec. 871(b). The phrase

---

[2]As a teacher, petitioner is considered an exempt individual, and, therefore, not treated as present for purposes of the substantial presence test. See sec. 7701(b)(1)(A)(ii), (3)(D)(i), (5)(A)(ii).

"trade or business within the United States" generally includes the performance of personal services within the United States at any time within the taxable year. Sec. 864(b). Compensation paid to a nonresident alien in exchange for the performance of services in the United States constitutes income that is effectively connected with the conduct of trade or business in the United States. Sec. 1.864-4(c)(6)(ii), Income Tax Regs. Consequently, petitioner's wages would ordinarily be included in gross income under the Code. Section 894(a), however, provides that the provisions of the Code will be applied to any taxpayer with due regard to any treaty obligations of the United States that apply to the taxpayer. Therefore, the treatment of petitioner's wages might be altered by applicable treaty provisions. See id.

The United States is a party to an income tax convention with the Republic of the Philippines. The convention provides an exemption from U.S. income taxation on income earned by Filipino teachers teaching in the United States if the requirements of the convention are satisfied. Article 21 states:

<u>Article 21</u>
TEACHERS
(1) Where a resident of one of the Contracting States is invited by the Government of the other Contracting State, a political subdivision or local authority thereof, or by a university or other recognized educational institution in that other Contracting State to come to that other Contracting State for a period not expected to exceed 2 years for the purpose of teaching or engaging in research, or

both, at a university or other recognized educational institution and such resident comes to that other Contracting State primarily for such purpose, his income from personal services for teaching or research at such university or educational institution shall be exempt from tax by that other Contracting State for a period not exceeding 2 years from the date of his arrival in that other Contracting State.

To qualify for the exemption under article 21, a taxpayer must meet the following requirements:  (1) The taxpayer was a resident of the Philippines before coming to the United States; (2) she was invited by the Government or a recognized educational institution within the United States; (3) she was invited for a period not expected to exceed 2 years; (4) the purpose of the invitation was for her to teach or engage in research at the recognized educational institution; and (5) she did in fact come to the United States primarily to carry out the purpose of the invitation.  All of the requirements of article 21 must be satisfied in order for petitioner to qualify for the income exemption.  The only requirement in dispute is whether petitioner's invitation to teach in the United States was "for a period not expected to exceed 2 years".

The text of article 21 does not specifically state whose expectation controls the length of the invitation to teach for a period not to exceed 2 years.  Petitioner argues that her expectation as the invitee is the only expectation that matters. Respondent counters that either the expectation of the invitor, BCPS, should be decisive, or that the Court should weigh the

expectations of all the parties associated with the exchange teacher program.  In the light of this ambiguity in the text of article 21, we will consider all the relevant facts and circumstances, including the expectations of all the parties. Santos v. Commissioner, 135 T.C. __, __ (2010) (slip op. at 17). We will construe article 21 liberally.  See N. W. Life Assurance Co. of Can. v. Commissioner, 107 T.C. 363, 378 (1996).  Then we will make an objective determination of whether petitioner was invited to the United States "for a period not expected to exceed 2 years".  See Santos v. Commissioner, supra.

A.  Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving that the deficiency is incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Furthermore, any deductions allowed are a matter of legislative grace, and the taxpayer bears the burden of proving his entitlement to them.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Under section 7491(a) the burden may shift to the Commissioner regarding factual matters affecting a taxpayer's liability for tax if the taxpayer produces credible evidence and meets other requirements of the section.  Petitioner moved for a burden shift under section 7491(a), contending that she produced

credible evidence and met the other requirements of the section. Respondent objected, contending that "petitioner has failed to introduce credible evidence to support her assertion that her stay in the United States was expected to last 2 years or less." We need not, and we explicitly do not, decide which party bears the burden of proof because as discussed above, applying Santos v. Commissioner, supra, we will decide this case on an objective consideration of all the relevant facts and circumstances.

B. Analysis

We begin our analysis with a discussion of the evidence that relates to petitioner's expectation. Petitioner's reliance on the 1-year apartment lease and the 1-year BCPS employment contract is unconvincing. One-year apartment leases are commonplace and do little to indicate a tenant's long-term expectation to remain in an area.

Likewise, BCPS required all of its first-year teachers to sign what amounts to a standard 1-year employment contract. The fact that the contract did not guarantee employment beyond the first year does not mean that petitioner expected to stay in the United States for only 1 year. Amity had informed petitioner that so long as her performance was satisfactory, BCPS would retain her. We believe it likely that petitioner had sufficient confidence in her teaching skills to assume that her performance would be "satisfactory" and therefore she could expect that BCPS

would employ her for the second and third years and perhaps beyond.

Petitioner also testified that in her mind, the information in her 3-year J-1 visa application that Amity prepared and she signed simply established an upper time limit and did not imply a commitment to stay in the United States for 3 years. Petitioner uses the same argument with respect to the 3-year exchange teacher program. While it is true that the documents did not obligate her to remain in the United States, we find it particularly hard to believe that petitioner did not expect to remain in the United States for the duration of the exchange program.

More persuasive are petitioner's own words in her answers on the three IRS questionnaires. Her answers indicate that her initial expectation was to remain in the United States for the entire length of the visa and of the 3-year exchange teacher program. In response to this evidence against her, petitioner testified that she did not have any help filling out the forms and that the questions were confusing. This testimony is not credible because petitioner has a master's degree in education, she speaks fluent English, and the questions on the forms are straightforward, not requiring any technical knowledge.

Furthermore, petitioner introduced no evidence that she expressed to any of the parties involved that she expected to

return to the Philippines within her first 2 years in the United States.  Similarly, petitioner did not testify at trial that she expected to return home within the first 2 years.  Instead, she stated that she determined her expectation regarding the length of her stay on a "year-to-year" evaluation of her situation.

We also find it highly significant that despite the students' bad behavior, her physical injury, and the denial of her request to transfer to a less harsh classroom environment, petitioner remained in Baltimore teaching at Lombard and as of the date of trial continued to work for BCPS.  Petitioner's actions indicate a strong commitment to staying in the United States despite the difficulties.  The fact that petitioner resigned her teaching position in the Philippines, while not a decisive factor, also weighs against her argument.

In addition, we cannot ignore the financial incentive of remaining in the United States for as long as possible. Petitioner and her family incurred more than $8,000 in expenses for petitioner to participate in the exchange teacher program and to relocate to the United States.  This is not an insignificant sum in comparison to her earnings in the Philippines.  Moreover, her earnings immediately grew eightfold from $4,284 to $34,973 when she moved from the Philippines to the United States. Further, her earnings of $48,674 in 2007, which was her third

year at BCPS, were 39 percent greater than her first-year salary at BCPS.

From the perspective of BCPS, the school system certainly would not have invested so much time, money, and effort in recruiting teachers from the Philippines if it did not expect that the teachers would remain at least for the length of the 3-year exchange teacher program. Mr. Duque likewise testified that BCPS wanted to retain the teachers it hired for as long as possible. Corroborating this testimony is the evidence from the addendum showing that BCPS retained an extremely high percentage, 95.5 percent, of the Filipino teachers it hired through the exchange program. Additionally, Ms. Hermann testified that BCPS, similar to the other school systems that hired foreign teachers through the exchange program, expected the teachers to stay for the entire 3-year program. She added that it had been Amity's experience that only a small percentage of Filipino teachers returned to the Philippines before completing the 3-year exchange teacher program and that most participants decided to remain in the United States beyond the 3 years. The testimony of these witnesses is plausible, reliable, and persuasive.

In conclusion, after an objective examination of all of the relevant facts and circumstances, we find that petitioner and BCPS expected petitioner to stay in the United States for at least 3 years, which is greater than the "not expected to exceed

2 years" requirement of article 21.  Therefore, petitioner's income for June 2005 to June 2007, the first 2 years she was in the United States, is not exempt from Federal income tax under article 21.

II.  <u>Disallowed Itemized Deductions</u>

Section 162(a) allows a deduction for ordinary and necessary business expenses paid or incurred during the taxable year in carrying on any trade or business.  The performance of services as an employee is considered a trade or business for section 162 purposes.  <u>Primuth v. Commissioner</u>, 54 T.C. 374, 377 (1970).  For an expense to be necessary, it must be "appropriate and helpful" to the taxpayer's business.  <u>Welch v. Helvering</u>, 290 U.S. 111, 113-114 (1933).  An expense will be considered ordinary if it is a common or frequent occurrence in the type of business in which the taxpayer is involved.  <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940).  In order to deduct a business expense, a taxpayer must not have received reimbursement and must not have had the right to obtain reimbursement from his employer.  <u>Orvis v. Commissioner</u>, 788 F.2d 1406, 1408 (9th Cir. 1986), affg. T.C. Memo. 1984-533; <u>Leamy v. Commissioner</u>, 85 T.C. 798, 810 (1985).

A.  <u>Year 2005</u>

1.  <u>Legal/Documentation Fees</u>

Petitioner claimed a $5,000 deduction for 2005 for "legal/documentation" fees.  Petitioner testified that her

parents paid these fees.  This type of transaction is more appropriately characterized as a nontaxable gift from petitioner's parents than as an expense incurred and paid by petitioner.  See, e.g., <u>Cavalaris v. Commissioner</u>, T.C. Memo. 1996-308.  Therefore, we sustain respondent's disallowance of this deduction.

2.  <u>Unreimbursed Employee Business Expenses</u>

Petitioner's disallowed unreimbursed employee business expenses for 2005 consisted of $1,000 for a laptop computer, $200 for software, $400 for school supplies, and $308 for union dues.

Laptop computers and computer software are listed property. Sec. 280F(d)(4).  Section 274(d) imposes strict substantiation requirements for "listed property".  To substantiate expenses for listed property, a taxpayer must show either by adequate records or by sufficient evidence corroborating the taxpayer's own statement:  (1) The amount of each separate expenditure with respect to an item of listed property; (2) the amount of each business use based on the appropriate measure and the total use of the listed property for the taxable period; (3) the date of the expenditure or use; and (4) the business purpose for an expenditure or use with respect to any listed property.  Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  Petitioner did not substantiate the business use of the laptop and software.  Therefore, we sustain respondent's

disallowance of the deduction for petitioner's laptop and software expenses.

Petitioner deducted $400 for school supplies. She provided receipts for $137 worth of school supplies purchased in 2005. We are satisfied that petitioner spent $137 for school supplies in 2005 and was not reimbursed by BCPS. Therefore, petitioner is entitled to a deduction of $137 for school supplies for 2005. See sec. 62(a)(2)(D) (certain expenses of elementary and secondary school teachers are deductible to determine adjusted gross income).

Petitioner also claimed $308 for union dues for 2005. Petitioner provided as evidence her BCPS paycheck for the 2-week period of November 12-25, 2005. The paycheck showed a biweekly deduction of $28.72 and a year-to-date deduction of $172.32 for union dues that she paid to the Baltimore Teachers Union. We infer that petitioner received two more bi-weekly paychecks in December with the same amount deducted for union dues. Therefore, petitioner has substantiated that she paid $229.76 in union dues in 2005 and is entitled to a deduction in that amount.

B. <u>Year 2006</u>

   1. <u>Personal Living and Commuting Expenses</u>

Respondent disallowed petitioner's itemized deductions of $6,038 for rent, including utilities, and $2,004 for commuting between her apartment and her teaching job at Lombard.

As a general rule, personal living expenses are nondeductible. Sec. 262; secs. 1.162-2(a), 1.262-1(b)(5), Income Tax Regs. Section 162(a)(2), however, allows a taxpayer to deduct ordinary and necessary travel expenses, including meals and lodging, paid or incurred while away from home in pursuit of a trade or business. <u>Commissioner v. Flowers</u>, 326 U.S. 465, 470 (1946).

The reference to "home" in section 162(a)(2) means the taxpayer's "tax home". <u>Mitchell v. Commissioner</u>, 74 T.C. 578, 581 (1980); <u>Kroll v. Commissioner</u>, 49 T.C. 557, 561-562 (1968). As a general rule, a taxpayer's tax home is in the vicinity of his principal place of employment, not where his personal residence is located, if different from his principal place of employment. <u>Mitchell v. Commissioner</u>, <u>supra</u> at 581; <u>Kroll v. Commissioner</u>, <u>supra</u> at 561-562. An exception to the general rule exists where a taxpayer accepts temporary, rather than indefinite, employment away from his personal residence; in that case, the taxpayer's personal residence may be his tax home. <u>Peurifoy v. Commissioner</u>, 358 U.S. 59, 60 (1958). The purpose of

the exception is to mitigate the burden of the taxpayer who must incur duplicate living expenses due to the exigencies of business. Kroll v. Commissioner, supra at 562. For purposes of section 162(a)(2), the taxpayer is not treated as being temporarily away from home if the period of employment exceeds 1 year. Sec. 162(a) (flush language).

Petitioner contends that her employment with BCPS was temporary because the BCPS employment contract she signed was for only 1 year. She contends that her tax home was in the Philippines, as that was where she resided. In other words, according to petitioner, her rent, utilities, and commuting expenses for 2006 are deductible because she expected to stay in the United States for no more than a year, and thus, her job was temporary.

Respondent argues that petitioner's employment at BCPS was indefinite and that her tax home became Baltimore when she moved there to teach for BCPS. For the following reasons, we agree with respondent.

Petitioner resigned her teaching job in the Philippines and moved to Baltimore on June 22, 2005. She began teaching at Lombard for BCPS in August 2005. We have already found that petitioner intended to remain working for BCPS in the Baltimore area for at least 3 years, which is clearly more than 1 year. Accordingly, petitioner's employment with BCPS was not temporary,

Baltimore was petitioner's principal place of employment, and thus Baltimore was her tax home. Moreover, petitioner testified that she lived with her parents before her move; thus she has not established either that she had a personal residence in the Philippines or that she incurred duplicate living expenses. Consequently, petitioner is not entitled to claim a deduction for her rent, utilities, or commuting expenses for 2006.

### 2. Other Itemized Deductions

Respondent disallowed petitioner's other itemized deductions for 2006, which consisted of $930 for an agency fee, $800 for airfare, $1,673 for computer equipment and supplies, and $847 for "2005 State Refund not Received".

The agency fee was a portion of the total fee of $3,000 that petitioner paid to Amity for her participation in the exchange teacher program. BCPS paid $1,500 of the fee during petitioner's first year in the program. Petitioner was responsible for the two subsequent annual payments of $750, one made in the second year of the program and one in the third. Petitioner had to pay the fee to continue her participation in the exchange program. Petitioner did not substantiate her $930 payment in 2006, but we are satisfied that petitioner paid a fee of $750 in 2006 to maintain her standing in the program. Therefore, petitioner is entitled to a deduction of $750 for 2006.

Petitioner testified that she paid $800 for a round trip flight to the Philippines in 2006, but she did not provide any evidence corroborating the payment or that the flight was associated with her trade or business of being an employee of BCPS and was not a personal trip. Therefore, we sustain respondent's disallowance of the $800 deduction for airfare.

Petitioner claimed a deduction for computer equipment and supplies of $1,673 for 2006. She provided no explanation for having to purchase a second computer for BCPS in 2 years, and she provided no substantiation of the purchase or of the business use of the computer. See sec. 274(d). For these reasons, we sustain respondent's disallowance of the $1,673 computer equipment and supplies expense.

Petitioner provided no explanation or evidence to support the $847 deduction she claimed in 2006 for "2005 State Refund not Received." Therefore, we sustain respondent's disallowance.

III. Accuracy-Related Penalty

Taxpayers may be liable for a 20-percent penalty on the portion of an underpayment of tax attributable to negligence, disregard of rules or regulations, or a substantial understatement of income tax. Sec. 6662(a) and (b)(1) and (2).

The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Code, and the term "disregard" includes any careless, reckless, or

intentional disregard.  Sec. 6662(c).  Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances.  See Allen v. Commissioner, 92 T.C. 1, 12 (1989), affd. 925 F.2d 348, 353 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985).  An "understatement of income tax" is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).

The section 6662 accuracy-related penalty does not apply where the taxpayer shows that he or she acted in good faith and with reasonable cause.  Sec. 6664(c)(1).  The determination of whether a taxpayer acted in good faith and with reasonable cause depends on the facts and circumstances of each case and includes the knowledge and experience of the taxpayer and the reliance on the advice of a professional, such as an accountant.  Sec. 1.6664-4(b)(1), Income Tax Regs.  For a taxpayer to rely reasonably upon advice of a tax adviser, the taxpayer must, at a minimum, prove by a preponderance of the evidence that:  (1) The adviser was a competent professional with sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment.  Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002).  Most important in

this determination is the extent of the taxpayer's effort to determine the proper tax liability.  Id.

The Commissioner has the burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662.  To satisfy that burden, the Commissioner must produce sufficient evidence showing that it is appropriate to impose the penalty.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Respondent has satisfied his burden by producing evidence that petitioner reported no income for 2005, 2006, and part of 2007, creating understatements of income taxes due that were substantial.

Nonetheless, petitioner sought the advice of one return preparer for her 2005 and 2006 Forms 1040NR and a different preparer for her 2007 Form 1040.  Petitioner stated that her preparer for 2005 and 2006 was an accountant in the Philippines and an enrolled agent in the United States.  Respondent did not dispute the competency of either preparer.  The preparer of the Forms 1040NR counseled petitioner that her income was exempt from taxation in the United States under article 21.  Petitioner, having no formal training in taxation and being new to the U.S. tax system, reasonably relied upon the advice of a competent tax return preparer and acted in good faith.  Respondent's adjustments for 2007 were minor, and again, petitioner engaged a competent preparer to prepare her 2007 Federal income tax return.

Therefore, we do not sustain respondent's determination that the section 6662 accuracy-related penalty applies for 2005, 2006, or 2007.

IV. <u>Conclusion</u>

The Court has considered all arguments made in reaching our decision, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.